## PEOPLE *vs.* LYNN.

*Ninth District Court for Trinity Co., April T.,* 1858.

OFFICIAL BOND——ERASURE——OFFICER——ELECTION.

The sureties upon an official bond, given by one on entering on his official duties, and conditioned that the particular individual, (naming him,) shall "well and truly perform, &c.," cannot, in an action brought against them as sureties, object that the election of their principal was unauthorised and void.

The fact of his having assumed the duties of office, although by virtue of an election that may have been illegal, is sufficient to charge the sureties, with a liability for acts done by him as such officer.

The fact that the name of one of the sureties to a joint and several official bond, has been erased, does not render the bond void, and those sureties who signed above the name erased, are bound by the bond.

Those who signed below are not bound, for it may have been that the signature erased was the principal inducement for them to sign, and the fact that the bond is joint and several, and that the action could be prosecuted against any or all of the sureties, does not prevent their pleading that it is not their bond, for there has been an alteration of consideration.

Action on an official bond which had been altered by erasing the name of one of the sureties therefrom.

The case was tried before a jury, who, being instructed to find a special verdict upon the following questions of fact, answered as follows:—

Was an election held in the county of Trinity on the 6th of Sept. 1854? Yes.

If so, who was elected treasurer of Trinity county? *C. F. Lynn.*

Did the person elected to the office of treasurer, execute the paper sued on, and described in plaintiff's complaint? Yes.

Did *C. F. Lynn,* ever take upon himself the duties of treasurer of Trinity county, and receive moneys belonging to the state, which he has failed to pay over into the state treasury, and if so how much? He did—$13,000.

What names were upon the bond of *C. F. Lynn,* at the time the name of *J. A. Batchelor* was erased? *All* the names now on the bond.

When was *Batchelor's* name erased, and by whom? Before the filing or approval of the bond, and by himself.

What amount is due from *C. F. Lynn* to the state of *California,* by virtue of the covenants in the bond sued on? $13,000.

On the trial several objections were interposed to the introduction of any testimony with regard to the election of *C. F. Lynn,* inasmuch as the supreme court in (6 *Cal.,* 76, and 84,) held that there was no general election for county officers in 1854, and as the general law required officers to be elected at the general elections for each county in 1853, 1855 and 1857, the election was without authority of law and therefore void.

*J. Gallagher,* (district attorney,) and *Sprague & McMurtry,* for plaintiffs.

*Pitzer & Burch, J. Chadbourne,* and *J. M. Howe,* for defendants.

DAINGERFIELD, J.—The election being under a special statute for Trinity county, and fair upon its face, and the bond reciting in terms that *C. F. Lynn* had been duly elected and qualified as treasurer of Trinity county, the sureties cannot go behind their bond, and attack the election in this proceeding. Whether he was duly elected or not, if *Lynn* has taken upon himself the duties of office as treasurer under and by virtue of said election, that fact alone will make the sureties responsible for his acts.

Even had *Lynn* not been legally elected, that is a matter that is personal to himself, inasmuch as, if not properly elected, he might be ousted, and the legislature have passed a law in reference to his office, and declared the election legal, so that he could not be ousted therefrom. The passage of this law did not affect the sureties, for they would be responsible whether *Lynn* was legally or illegally elected, and consequently no *ex post facto* law was passed, or law altering a contract. The sureties obligated themselves, that *Lynn* should perform the *duties of treasurer,* not that he should be legally elected treasurer. This objection is therefore not well taken, and is overruled.

Another point raised is, that the bond having been altered by erasing the name of *Batchelor*, without showing that it was done with the consent of all the sureties, the same is void absolutely. The authorities were fully examined on the argument of the demurrer, at the last term of this court, (*ante*, 34,) and after due reflection and examination, I then held that the instrument was not void, and the sureties whose names appeared above the erasure, (the name erased having been written after those above,) were liable, and I see no reason to change my former ruling. The bond is properly evidenced in this case, and all the sureties whose names are above *Batchelor's* are bound by this bond. The second objection is therefore overruled.

The third and last objection which I deem it necessary to notice in rendering a judgment of law on the facts as found, is, " that the sureties whose names appear below *Batchelor's*, are not bound." It is argued by the plaintiffs, that this bond is *joint* and *several*, and that under our statutes, any or all the sureties may be sued. This is literally true, but are not all official bonds so ? Are not common law bonds generally written so ?. And still the authorities lay down the doctrine, that an erasure vitiates, sometimes to the whole extent, whilst under certain other circumstances, only in part. The remedy, or the form of action alone is changed by our statute, whilst the legal rights of parties are the same. Under our practice, the state may recover against a few only of the sureties, whilst those few may seek from the others their *pro rata* contribution. So that in truth it makes no difference practically whether the state sues or whether individuals sue.

Then if *Batchelor's* name was upon the bond at the time that *Rhodes, Seaman, Chadbourne,* and *Howe,* signed it, the presumption of law is that the name of *Batchelor* was an inducement moving them, and the bond having had its *consideration changed*, the plea which they set up as a defence, that it is not their bond, must be held good in the absence of proof, that the fact that *Batchelor* had signed it, could not have influenced them. For aught that has appeared on the trial, *Batchelor* was perhaps the only responsible person that signed the bond, out of whom the other sureties who signed after him could

have made any portion of this judgment, and apart from that fact, his having been an old resident and approved business man may have operated as an inducement.

I do not think from the facts found and the authorities cited, that the sureties below the name of *Batchelor* are bound, and I shall so order a judgment to be entered.

The counsel for the state contend that sureties cannot take advantage of a defence which the original could not. Whether that be law or not, is immaterial in the decision of this case, for I apprehend if applied to *Batchelor*, the plaintiff would be required to show a delivery before the erasure to bind him, and even were no erasure made, and the *conditions* were changed, the liability would not remain. But there is a difference between the principal and sureties, the sureties being only bound for acts under color of his being treasurer. *Lynn*, on the contrary, would be bound for any money he might receive for the state, representing himself as treasurer.

The judgment of law therefore upon the above facts is, that the plaintiff is entitled to a judgment against all the sureties named above *Batchelor*, and that execution issue against them jointly and severally, and that the defendants signing below the name of *Batchelor*, recover their costs of suit and money disbursements.